AMERICAN ALLIANCE INSURANCE COMPANY, Aetna Insurance Company, Commonwealth Insurance Company, Home Insurance Company, Kansas City Fire and Marine Insurance Company, New England Fire Insurance Company, Niagara Fire Insurance Company, Philadelphia Fire and Marine Insurance Company, Royal Exchange Assurance Company, Sun Insurance Company, and Westchester Fire Insurance Company, All Corporations (Plaintiffs), Respondents,

v.

Louis H. MITCHELL, Betty K. Mitchell, as Individuals d/b/a Mayer's, Mayer's, a Partnership, Edward K. Schwartz and Melman Fixture Company, Inc., a Corporation, Defendants,

United States of America (Intervenor), Appellant.

No. 29701.

St. Louis Court of Appeals.

Missouri.

Feb. 28, 1957.

Motion for Rehearing or for Transfer to Supreme Court Denied March 29, 1957.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, and Robert E. Manuel, Attys., Department of Justice, Washington, D. C., Harry Richards, U. S. Atty., Robert E. Brauer, Asst. U. S. Atty., St. Louis, for appellant.

Willson, Cunningham & McClellan, J. H. Cunningham, Jr., and Richard D. Gunn, St. Louis, for respondents.

ANDERSON, Presiding Judge.

This is an appeal from a judgment of the Circuit Court sustaining a bill of interpleader and allowing a fee of $1,500 to the attorneys for the plaintiffs to be paid out of the fund paid into the registry of the court. The appeal is by the United States, one of the claimants to said fund. No question has been raised as to the propriety of the decree of interpleader, or the reasonableness of the fee allowed. The sole question is whether an award of counsel fees may be made in an interpleader action where the United States is made a party and claims priority to the entire fund under the federal tax lien statutes.

The plaintiffs in their bill of interpleader alleged that they had incurred liability under certain policies of fire insurance issued to Louis H. Mitchell and Betty K. Mitchell, a partnership doing business as Mayer's, by reason of fire losses sustained on July 16, 1949, and August 19, 1949. The admitted liability was for $4,000 for the July 16th loss, and $43,680 for the August 19th loss. It was alleged that said companies were faced with conflicting claims to the proceeds due; that defendants Louis H. Mitchell and Betty K. Mitchell claimed said proceeds as owners of the property damaged

and destroyed; that defendant Melman Fixture Company, Inc., claimed the fund as assignee in the amount of $4,000; and that the defendant Director of Internal Revenue of the United States Government, First District of Missouri, claimed said fund for unpaid taxes due from said insureds to the United States in an amount in excess of the total sums payable by plaintiffs. Respondents' bill prayed that the defendants be required to interplead and assert their claims to said fund, and that plaintiffs be allowed their reasonable costs, including attorneys' fees, to be paid out of the fund, and that they be discharged from all further liability to each of said defendants.

The court below dismissed the Director of Revenue as a party defendant, for lack of jurisdiction. Thereafter, the United States of America filed its motion for permission to intervene and to interplead for said fund. This motion was sustained. An intervening petition was then filed by the United States. In said petition it was alleged that the Commissioner of Internal Revenue in his August 30, 1949, special list made jeopardy assessments of additional income tax, interest, and 50% fraud penalties against Louis H. Mitchell for the years 1942 through 1946; that said taxes were unpaid and were in the total amount of $597,876.53; that said list was received on August 30, 1949, by the Collector of Internal Revenue, St. Louis, Missouri, who gave notice to and demanded payment of the defendant Mitchell on September 1, 1949; that no part of said assessment having been paid, except for the sum of $705.-01 which was credited on the 1942 account, the director issued warrants for distraint for the collection thereof on May 10, 1951; that on September 1, 1949, and on September 20, 1949, written notice of tax liens in the total sum of $598,581.54 against defendant Mitchell were filed with the Recorder of Deeds, St. Louis, Missouri, and the Recorder of Deeds, St. Louis County, Clayton, Missouri; that, on October 10, 1949, a notice of deficiency was mailed to

defendant Louis H. Mitchell; that thereafter said defendant filed a petition for review with the tax court of the United States; that the tax court, on March 23, 1951, entered its decision affirming the determination of the commissioner, and finding the deficiencies in taxes and penalties to be correct as set forth in the deficiency notice; that on or about September 30, 1949, there was served upon each of the plaintiffs a notice of levy dated September 29, 1949, in the amount of $601,335.01 (which amount included interest to date of the levy), together with copies of warrants for distraint and tax liens, and demanding payment of their indebtedness to Louis H. Mitchell, to be applied in payment of said tax liability; that upon failure to pay said indebtedness to the United States, pursuant to its demands, the Collector of Internal Revenue, on or about October 24, 1949, served upon plaintiffs a final notice and demand for the payment and surrender by them of any deposits, monies, credits, property and rights to property, belonging to or owned by Louis H. Mitchell, for the satisfaction or partial satisfaction of the unpaid tax due from said defendant to the United States. The petition further alleged that, subsequently, federal tax liens arose out of assessments for income taxes against the defendants Louis H. Mitchell and Betty K. Mitchell for the years 1948, 1951, 1952, and 1953, in the amount of $17,398.82, no part of which has been paid.

It was also alleged that there was assessed against defendants Louis H. Mitchell and Betty K. Mitchell an F. I. C. A. tax, together with interest and penalties, in the total amount of $3,827.42, for the fourth quarter of 1948, no part of which has been paid.

The prayer of the petition was that the merits of all claims to the funds held by plaintiffs be fully determined, and that the liens and claims of the United States be accorded priority; that the court decree defendant Louis H. Mitchell indebted to the United States in the sum of $601.335.01,

with interest; that the court decree defendants Louis H. Mitchell and Betty K. Mitchell indebted to the United States in the sum of $17,398.82, with interest; that the court decree Louis H. Mitchell and Betty K. Mitchell indebted to the United States in the sum of $3,827.42, with interest; that the court decree the entire proceeds held by plaintiffs to be due solely to defendant Louis H. Mitchell, and that said proceeds be first applied to the payment of $601,335.01 and interest due to the United States; or, in the alternative, to order the share of Betty K. Mitchell be first applied to the payment of the joint and several indebtedness to the United States in the amounts of $17,398.82 and $3,827.42; and that the share of defendant Louis H. Mitchell be applied to the satisfaction of the indebtedness of $601,335.01 with interest. The petition then prayed for a deficiency judgment against Louis H. Mitchell and Betty K. Mitchell for any unsatisfied amounts due.

On October 3, 1955, a hearing was had on the issues presented by plaintiffs' bill of interpleader. At the conclusion of the hearing the matter was taken under advisement. Thereafter, and on May 24, 1956, the court found the issues in favor of plaintiffs. The bill of interpleader was sustained; defendants and intervenors were ordered to interplead for the funds paid into court; plaintiffs were discharged from all further liability to defendants and intervenors; and the law firm of Willson, Cunningham and McClellan was allowed the sum of $1,500 for services rendered plaintiffs in connection with said suit— said sum to be paid out of the funds theretofore tendered into court by plaintiffs. The defendants named in the decree were Louis H. Mitchell, Betty K. Mitchell, individually and as co-partners doing business as Mayer's, Mayer's, a partnership, Edward K. Schwartz and Melman Fixture Company, Inc. The intervenors named were Morris A. Shenker and the United States of America.

Thereafter, on June 1, 1956, the appellant filed its motion for a new trial, praying that the court vacate its previous order of May 24, 1956, and grant a new trial on the grounds, inter alia, that plaintiffs' attorneys were not entitled to receive an allowance out of the funds deposited in court as a matter of law. This motion was overruled. Thereafter, in due time, intervenor, United States of America, appealed.

Appellant contends that the court erred in awarding attorneys' fees out of the fund deposited in court prior to an adjudication of the merits and priority of the various claims, for the reason that the United States would be entitled to the whole fund, undiminished by attorneys' fees and costs, should it prevail by establishing the priority of its lien. In making this contention intervenor relies upon the ruling of the Supreme Court of the United States in United States v. Liverpool & London & Globe Insurance Co., 348 U.S. 215, 75 S.Ct. 247, 248, 99 L.Ed. 268. In that case suit was brought in a Texas State Court against one Adams. The latter at the time had owing to him the proceeds of certain fire insurance policies. These proceeds were garnished by the plaintiff. The insurance company thereupon moved to have the United States made a party by reason of the fact that it had asserted a claim to the funds. This motion was granted. Thereafter, the United States removed the suit to the U. S. District Court. After removal, and on its motion, the United States was dismissed from the case, but thereafter filed its petition in intervention claiming a prior lien on all property and rights to the property of Adams for unpaid taxes. The District Court held the lien of the creditor superior to that of the government and awarded the insurance company, garnishees, an allowance of attorney's fees. 107 F.Supp. 405. The Court of Appeals, 5 Cir., 209 F.2d 684, affirmed this allowance, as well as the trial court's determination that the garnishment lien was superior to the federal

tax lien. The Supreme Court reversed both holdings. In voiding the allowance of the attorney's fee, the court said:

"As to the attorney's fee allowed the garnishee insurance company, Rule 677, Vernon's Texas Rules of Civil Procedure, provides:

" 'Where the garnishee is discharged upon his answer, the cost of the proceeding, including a reasonable compensation to the garnishee, shall be taxed against the plaintiff; where the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant and included in the execution provided for in this section; where the answer is contested, the costs shall abide the issue of such contest.'

"The District Court evidently found there was no contest between the insurance company and the other parties, and that the insurance company should be discharged with costs and allowance of a reasonable attorney's fee of $500. It, therefore, ordered the clerk to issue a check to the insurance company, payable out of the funds paid into the court by it.

"If the garnishment lien is not prior to the Government liens, and we have held that it is not, certainly fees allowed in that proceeding are not prior to the Government liens, and the authorization of the payment of the attorney's fees prior to the Government liens was error. The costs and fees should be adjudged against the defendant, as provided by Rule 677."

It will be observed that the above case was a proceeding in garnishment brought under the Texas statutes, and that the Supreme Court held that the costs, including an attorney's fee to the garnishee, should be taxed against the defendant, as provided by Rule 677, Vernon's Texas Rules of Civil Procedure. In other words, it

seems to us that the Liverpool case stands for the proposition that costs in such cases should be taxed in accordance with the applicable state law. This seems to be in accord with the long established principle announced by the Supreme Court of the United States. That court has many times held that where the sovereign invokes the aid of a court, it must submit to the application of the same principles which govern private suitors. The Paquete Habana, 189 U.S. 453, 23 S.Ct. 593, 47 L.Ed. 900; The Nuestra Senora de Regla, 108 U.S. 92, 2 S.Ct. 287, 27 L.Ed. 662. See, also, Jones v. Watts, 5 Cir., 142 F.2d 575, 163 A.L.R. 240. Any other rule would be unconscionable, and we look with narrowing eyes upon appellant's attempt to use our courts free from the obligation to abide by the rule which binds other litigants.

Our courts of equity have always exercised inherent jurisdiction to award counsel for the interpleading plaintiff a fee chargeable against the fund brought into court, Concordia Fire Insurance Co. v. Alexander, Mo.App., 50 S.W.2d 687; and we see nothing in the actual holding in the Liverpool case, supra, which denies the right of the court to exercise that jurisdiction where the United States is a party.

We agree with the reasoning advanced by the learned District Judge in United States v. Ullman, D.C., 115 F.Supp. 211, 215, when the identical question was before him. In that case, the United States contended that the court was without power to make an allowance of attorneys' fees on the theory that to do so would, in effect, be allowing costs and attorneys' fees against the United States, which was not permissible, except as provided in Section 2412, Title 28 U.S.C. The court reviewed said section and stated that there was nothing therein which indicated an intent on the part of Congress to grant to the United States rights superior to any other litigant in interpleader actions. The court said:

"There is nothing in the language of the statute which would warrant the Court in penalizing an innocent stakeholder simply because the United States happens to be a party to the litigation. A holding as contended for by the Government would engraft by decisional law a preference in favor of the United States not specifically provided for by Congress and unwarranted on equitable principles. That the sum ultimately recovered by the United States might be slightly diminished is of no moment. It is still the property of the defendant. It would be an extremely strained construction of words to describe that slight diminution as costs and attorneys' fees taxed against the United States. I cannot and will not so construe the plain language of the statute. Rather do I believe that this case merits the application of the equitable principles underlying all interpleader actions."

Another case in point is that of R. F. Ball Construction Co. v. Jacobs, D.C., 140 F.Supp. 60, 65, affirmed by the U. S. Court of Appeals for the Fifth Circuit on December 26, 1956, 239 F.2d 384. In that case a general contractor filed an interpleader action joining various parties, including the United States, and the court had occasion to review the decision in the Liverpool case with respect to the allowance of attorney's fee. The court said:

"The Government, on the other hand, contends that under the case of United States v. Liverpool, etc., supra, the interpleader is not entitled to his costs. There can be no question as to the status of Ball in this matter. Ball was an innocent stakeholder confronted with conflicting claims to a fund which was in his hands, and he adopted the proper course of employing attorneys and tendering this money into court. As was said by the Supreme Court in its opinion therein, the Liverpool case had to do solely with a garnishee's fee under Rule 677 of the Texas Rules of Civil Procedure and did not purport to deal with an Interpleader action under Texas Rule 43 or Rule 22 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and it is therefore not controlling. On the other hand, the case of United States v. Ullman, D.C., 115 F.Supp. 211, is directly in point, and I adopt the reasoning of the court in that case and hold that Ball is entitled to his interpleader's fee in this case * *."

The appellant has cited two decisions which rely on the Liverpool case as controlling authority that counsel fees may not be allowed in interpleader actions, namely, Ford Motor Co. v. Hackart Construction Co., D.C.N.J., 143 F.Supp. 216, and Boston Insurance Co. v. Stubbs (W. D. Washington, not officially reported, but available 1956 C.C.H., par. 9695). In our judgment, the effect of the Liverpool opinion was misconstrued in each case.

The judgment appealed from should be affirmed. It is so ordered.

MATTHES, J., and GEORGE P. ADAMS, Special Judge, concur.